In the Matter of **MEDICAL STERILE PRODUCTS**, Debtor.

No. B-65-68.

United States District Court, D. Puerto Rico.

March 25, 1970.

Hector Reichard, Aguadilla, P. R., for debtor.

Louis P. Rosenberg, Brooklyn, N. Y., for trustee of Elmcliff Corp.

W. H. Beckerleg, San Juan, P. R., referee in bankruptcy.

MEMORANDUM OPINION AND ORDER

FERNANDEZ-BADILLO, District Judge.

On November 22, 1965 Elmcliff Corporation filed a proceeding under Chap-

ter XI of the Bankruptcy Act in the Southern District of New York. By order of the same date of Mr. Roy Babitt, the Referee in Bankruptcy in charge of said proceeding, Elmcliff Corporation was continued as a debtor-in-possession. The debtor failed to file a satisfactory proposal for arrangement and on February 1, 1966 an order was entered adjudicating it a bankrupt and Mr. Maxwell Slote was appointed trustee.

During the pendency of the Chapter XI proceeding, on January 7, 1966 the President of Elmcliff Corporation, Mr. Morton Morse, came to Puerto Rico and on behalf of said corporation executed a document with Medical Sterile Products, debtor in the proceeding herein, which contained an agreement by means of which certain debt of Medical Sterile Products was cancelled in consideration of an issuance by the debtor of six hundred shares of stock to Elmcliff. The agreement purported to be a release or discharge of Medical's obligation.

On October 9, 1968 Mr. Maxwell Slote, as trustee in bankruptcy of Elmcliff Corporation, filed a proof of unsecured claim in the proceeding herein as to the above mentioned debt in the amount of $31,500 plus interest in the amount of $8,662.50 for a total of $40,162.50.

The debtor opposed the allowance of the claim on the ground that the debt had been discharged or released. The trustee took the position that there was no authority to execute the release or discharge.

The Referee of this Court denied the claim and the trustee filed a petition to review. The question on review is whether the referee erred in upholding the release or discharge of the debt.

■ There is no doubt as to the fact that when the agreement of release of said debt was executed Elmcliff Corporation was subject to a Chapter XI bankruptcy proceeding pending in the United States District Court for the Southern District of New York and, therefore, the bankruptcy court had "exclusive jurisdiction of the debtor and his property wherever located." Bankruptcy Act, section 311, 11 U.S.C. § 711. Consequently, it is free of any doubt that an authorization of the New York Bankruptcy Court was necessary in order to discharge the debt. Bankruptcy Act, Section 27, 11 U.S.C. § 50, and General Order 33.[1]

The Referee of this Court found out that paragraph "8" of Referee Babitt's order[2] was sufficient authorization for the compromise or release of the debt.

I now decide that this Court's Referee misconstrued the provisions and intentions of said order and erred in upholding the compromise or discharge of the debt.

■ The requirement for court approval, as established in Section 27 of the Bankruptcy Act, supra, and General Order 33, supra, is rigid and makes necessary the submission of an application containing all the facts pertinent to a

---

1. Section 27 provides:
   "The receiver or trustee may, with the approval of the court, compromise any controversy arising in the administration of the estate upon such terms as he may deem for the best interest of the estate."

   General Order 33, promulgated to implement Section 27, provides:
   "Whenever a receiver, trustee or debtor in possession shall make application to the court for authority to submit to arbitration any controversy arising in the settlement of an estate, or for authority to compromise any such controversy, the application shall clearly

and distinctly set forth the subject matter of the controversy, and the reasons why it is proper and for the best interest of the estate that the controversy shall be settled by arbitration or compromise."

2. Said paragraph reads:
   "That the debtor-in-possession may institute, prosecute, defend, compromise, adjust, intervene, or become party to any action or proceeding at law or in equity in any state or federal court, as may be necessary for the protection, maintenance and preservation of its assets."

proposed compromise. Moreover, Section 58(a) (6) of the Act, 11 U.S.C. Sec. 94, requires the giving of notice to creditors of such proposed compromise unless the court, for cause shown, directs that notice be not sent. It could hardly, therefore, be assumed that Referee Babitt ignored what Congress and the United States Supreme court mandated, and granted a debtor-in-possession "blanket approval" to compromise without compliance of the applicable requirements for authorization to compromise.

■ It has been well recognized that there is a limitation on the right to compromise and even on the procurement of court approval, unless there has been compliance with the provisions of the Bankruptcy Act and General Orders. See In re Sherman Plastering Corp., 340 F.2d 915, 918–919 (2 Cir.1965); Parker v. Baltimore Paint & Chemical Corp., 273 F.Supp. 651, 653 (D.C.Colo.1967); In re National Public Service Corp., 68 F.2d 859, 862 (2 Cir.1934); Wheeling Structural Steel Co. v. Moss, 62 F.2d 37, 39–40 (4 Cir.1932); 2 Colliers on Bankruptcy, 14th Edition, Sections 27.03 to 27.05, inclusive, pages 1088–1100 (Moore & Oglesbay ed. 1964).

■ In view of the foregoing, the order of Referee Babitt cannot be interpreted as granting a "blanket authority" to the debtor-in-possession, in complete disregard of the mandatory provisions of the Act and the General Order. Paragraph "8" of Referee Babitt's order must be read in conjunction with paragraph "1" thereof, which continued the debtor-in-possession and provides that he

" * * * shall have all the title and may exercise consistently with the provisions of Chapter XI of the Bankruptcy Act, all the powers of a trustee appointed pursuant to Section 44 of said Act, *subject, however, at all times*

*to the control of the Court * * *."* (Emphasis supplied)

A careful reading of said order and reasonable interpretation thereof leads to the inescapable conclusion that said order merely prescribed the nature and extent of the duties of the debtor-in-possession, but it did not purport to grant a "blanket approval" to him to compromise substantial claims nor to exercise his duties without court supervision and approval in compliance with the provisions of the Act and General Orders.

■ The powers and duties of a receiver or trustee are prescribed by provisions of the Act, but such officer is not vested with authority to proceed alone. He remains under supervision and direction of the court. Lincoln National Life Insurance Co. v. Scales, 62 F.2d 582 (5 Cir.1933).

The logical construction of Referee Babitt's order, mindful of the mandate of the Act, is that the nature of the duties were prescribed and the debtor-in-possession could negotiate, but could not conclude without first obtaining specific approval. Woodmar Realty Company v. McLean, 306 F.2d 479 (7 Cir.1962).

Congress in enacting the Bankruptcy Act and the United States Supreme Court in promulgating General Order 33, in their wisdom insisted that any proposed compromise, to be effective, must first receive the approval of the Court. Section 58(a) (6) of the Act requires that creditors receive notice of the proposed compromise, unless for cause shown the court directs that notice be not sent. Safeguards have been enacted to prevent abuses by requiring approval of a compromise only upon such terms as the court "may deem for the best interest of the estate." Section 27 of the Bankruptcy Act, supra.

The order of the Referee, dated March 4, 1969 is hereby reversed. It is so ordered.